E. W. Lee, *et al.*, Copartners under the Firm Name and Style of Eastlake Investment Company, v. Growers Loan & Guaranty Company and J. W. Mead.

198 So. 193
Division B
Opinion Filed October 11, 1940
Rehearing Denied November 8, 1940

*Frank R. Greene,* for Plaintiffs in Error;

*L. M. Turner and H. M. Hampton,* for Defendant in Error.

CHAPMAN, J.—This case is here for review on writ of error to a final judgment entered for the defendant in the court below. The suit was brought in the Circuit Court of Marion County, Florida, and after the pleadings were settled and the issues determined, the cause was by an order of the circuit judge, under the provisions of Section 4561 C. G. L., referred to the Honorable W. E. Smith, as referee. The case was heard and determined by the referee and a writ of error taken as prescribed by Section 4565 C. G. L.

The action was for fraud and deceit. The amended declaration alleged that in August, 1931, plaintiffs were the owners of certain citrus grove property called Eastlake Investment Company located in Marion County, and were also the owners of a packing house company known as the Ocala Fruit Packing Company. The citrus grove and the packing house were indebted to the Growers Loan & Guaranty Company. The Growers Loan & Guaranty Company owned a

first mortgage on the citrus grove of the plaintiffs and a second mortgage thereon which it held as trustee for others. It owned a second mortgage on the packing house property and the first mortgage was held by the Federal Farm Board.

On August 17, 1931, the Ocala Fruit Packing Company and the Growers Loan & Guaranty Company entered into an agreement for the operation of the packing house for the 1931-1932 fruit season, which provided for a weekly advancement by the Growers Loan & Guaranty Company to the packing company for operating expenses and for the appointment of a Comptroller, who would have charge of the moneys, books of account, and records of packers, and was given the right to receive and disburse all funds of the packers and was put in complete control of the packing company. The agreement provided that the Growers Loan & Guaranty Company should appoint the Comptroller and in effect the Comptroller was to be its agent.

The agreement provided that the packing company should charge 85 cents per box on all fruit handled or packed by it, and 15 cents per box was to be retained out of the 85 cents and applied to the payment of the second mortgage on the packing plant held by the Growers Loan & Guaranty Company. The proceeds from the sale of fruit on which the Growers Loan & Guaranty Company held crop liens were to be credited to the indebtedness due to it by the owners of said fruit.

The Growers Loan & Guaranty Company, under the provisions of the agreement, *supra,* appointed J. W. Mead as comptroller during the fruit season of 1931-1932, and, as comptroller and as agent for the Growers Loan & Guaranty Company, he received the net proceeds of plaintiffs' fruit in the sum of $7,102.64, but transmitted only $3,908.47 to be credited on the plaintiffs' citrus mortgage due the

Growers Loan & Guaranty Company, and that $3,194.17 was not transmitted but was wrongfully diverted and unlawfully applied to the payment of other obligations beneficial to the Growers Loan & Guaranty Company, to the injury of the plaintiffs; and the said Mead reported to the plaintiff that the sum of $7,102.64 was credited to the citrus grove mortgage owned by the Growers Loan & Guaranty Company.

The fruit handled by the Ocala Fruit Packing Company for the 1932-1933 season was under the terms and provisions of the agreement dated August 17, 1931, wherein Mead, acting as agent for the Growers Loan & Guaranty Company and as Comptroller for the Ocala Fruit Packing Company, received net proceeds from the fruit of plaintiffs in the sum of $3,566.81, but transmitted only $1,165.75 to be credited on the mortgage on the citrus grove held by the Growers Loan & Guaranty Company, and diverted the sum of $2,401.06 to the use and benefit of the Growers Loan & Guaranty Company.

The plaintiffs, at the close of the season of 1933, learned of the unlawful and fraudulent diversion of the aforesaid sums of the plaintiffs arising from the sale of fruit from the grove of the Eastlake Investment Company by Mead acting as Comptroller for the Ocala Packing Company, which company packed the fruit of the Eastlake Investment Company, and by the terms of which agreement Mead was also agent of the Growers Loan & Guaranty Company.

This suit was brought to recover from the Growers Loan & Guaranty Company the sum of $3,194.17 of the plaintiffs' money diverted during the fruit season of 1931-1932, and for the sum of $2,401.06 diverted during the fruit season of 1932-1933 by Mead, as agent of the Growers Loan & Guaranty Company.

On April 13, 1936, the defendant filed a number of pleas

and a demurrer was sustained as to some and overruled as to others. The plea of not guilty remained in the record with a number of other pleas traversing specific allegations of the amended declaration. The thought is advanced that the defense of waiver and estoppel could be shown under the general issues and the court in settling the pleadings so held, but the referee was of the opinion that waiver and estoppel could not be shown under the general issues and should be pleaded. Formal pleas presenting these defenses were filed before the referee and a lengthy replication thereto was stricken on demurrer. The foregoing is a brief resume of the pleading on which testimony was taken.

Two of the plaintiffs testified at considerable length, which covered the entire period of time when the transactions were had, and statements of account, correspondence and documents were offered in evidence, together with the testimony of a young lady, who at the time acted as secretary of the Ocala Fruit Packing Company. The defendant did not offer any testimony as disclosed by the record, but relied on the testimony of the plaintiff and other testimony developed on cross examination to establish the defense of waiver and estoppel, and at the conclusion of the testimony of the plaintiff the defendant moved the court for a directed verdict because of the insufficiency of the evidence to sustain a verdict for the plaintiffs, and the motion was by the referee sustained.

The evidence adduced by the plaintiffs clearly establishes the material allegations of the amended declaration and on cross examination other facts were developed, which, when coupled with the direct testimony of the plaintiffs, prove and establish the material allegations of the pleas of estoppel and waiver, and the referee so held.

The testimony as disclosed by the record shows that plaintiffs, on July 1, 1935, owed the Growers Loan & Guaranty

Company approximately $7,500.00, secured by a mortgage on the grove property of the plaintiffs; that there was a second mortgage to the Growers Loan & Guaranty Company, as trustee, on the Eastlake Investment grove property for approximately $20,000.00, and a foreclosure suit had been filed, a receiver appointed, and an application to the Federal Land Bank Commissioner made in 1933 for funds to refinance the indebtedness, and during the month of 1935 the Federal Land Bank issued a commitment to be secured by first mortgage on the Eastlake Investment grove property in the sum of $18,000.00. The entire indebtedness in the form of the first and second mortgages and taxes approximated the sum of $30,000.00. The mortgage claims of the creditors and all taxes were paid on July 12, 1935, in the sum of $18,000.00, together with two notes of the plaintiffs to the Cummer Cypress Company and Exchange Supply Company in the sum of $2,173.82 each. The suit at bar was filed after the mortgage indebtedness of the Growers Loan & Guaranty Company had been refinanced by the Federal Land Bank.

The plaintiffs had knowledge of the diversion by J. W. Mead, as comptroller and agent, of the sum of $3,194.17 at the time it renewed the agreement under which the Ocala Fruit Packing Company handled fruit for the 1932-1933 season, and likewise had knowledge of the diversion of the sum of $2,401.06 when it applied to the Federal Land Bank for money to refinance its mortgage indebtedness with the Growers Loan & Guaranty Company. There is nothing in the record to show that these diverted items, with interest, were interposed by the plaintiffs as a defense to the foreclosure suit against the grove property filed in the Circuit Court of Marion County. If payment of these diverted funds had been insisted upon prior to the closing of the mortgage given to the Federal Land Bank, it stands to rea-

son that the mortgage indebtedness would never have been refinanced, and the Growers Loan & Guaranty Company would have followed its foreclosure and extinguished the rights of the plaintiffs in and to the property. It appears that there is sufficient evidence in the record to sustain the pleas of estoppel and waiver interposed by the Growers Loan & Guaranty Company and that the order of the referee in sustaining the motion for a directed verdict made on the part of the defendant below was not erroneous. See Rader v. Prather, 100 Fla. 591, 130 So. 15; Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751; 67 C. J., pp. 301-307.

We fail to find error in the record. The judgment appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.